IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                  Case No. 3:05CR737

        Plaintiff

v.                                                         ORDER

Bryan O. Johnson,

        Defendant

This is a criminal case in which the defendant was convicted following a jury trial of possession of a firearm while under the disability of a prior felony conviction and possession of a firearm with an obliterated serial number. Pending is his motion for a new trial, which has been filed by successor counsel.

For the reasons that follow, the motion shall be overruled.

**Background**

The defendant contends that his trial counsel, Paul Geller, deprived him of his right to effective assistance of counsel when he failed to call the defendant's mother, Everlana Johnson, as a witness. With his motion for a new trial, the defendant filed his mother's affidavit, in which she stated that she had expected to testify, was available to do so, and had informed the defendant's attorney that the firearm was hers, not her son's.

In light of these allegations, an evidentiary hearing was held. At that hearing Mr. Geller, Ms. Johnson, and the defendant testified.

Mr. Geller testified that he had met with Ms. Johnson prior to trial and discussed her possible testimony with her. He anticipated calling her as a witness for the defense, and that she would testify that the firearm belonged to her.

After the government rested and before beginning to present the defense case, Mr. Geller spoke with Ms. Johnson outside the courtroom. According to him, he asked her about two aspects of her anticipated testimony: 1) how a police officer had carried the firearm after its discovery, and 2) what kind of firearm it was.

Mr. Geller testified that Ms. Johnson told him that the officer had carried the firearm by putting a pencil through the trigger guard. In addition, he stated, she told him that the weapon was a revolver.

Because the gun did not have a trigger guard, it was not possible for it to be carried as Ms. Johnson's anticipated testimony would have described. In addition, the gun was not a revolver, but rather a semi-automatic pistol loaded with a magazine.

Mr. Geller concluded that Ms. Johnson's exculpatory testimony about her ownership of the firearm would be impeached and undercut were the jury to hear those two aspects of her testimony. He expected that they would, and concluded that it was more likely that she would harm rather than help her son's case.

On returning to the courtroom, Mr. Geller told the defendant he would not be calling his mother. The defendant did not object; nor did he affirmatively assent to that decision.

Ms. Johnson disputed Mr. Geller's account of their conversation outside the courtroom. She testified that she told Mr. Geller that the officer had carried the gun by placing its barrel on a pencil. In addition, she stated that she had not described the weapon as a revolver.

Had she been called to testify at the defendant's trial, Ms. Johnson stated that she would have told the jury that she had obtained the firearm for personal protection, it was not loaded when she had it, though she had purchased bullets for the weapon, and her son was not aware that it was in the house, which he shared with his mother and his girlfriend.

On cross-examination, Ms. Johnson stated that she had refused to speak to the officers during the raid in which the weapon was discovered because she was afraid that anything she said might lead to a charge against her. In a supplemental affidavit, Ms. Johnson had stated that she did not respond to the officers' questions about the weapon because she was suffering chest pains and unable to breathe. That affidavit also stated that because of the officers' yelling and foul language she was afraid for her life.

In addition to the inconsistency between her affidavit and hearing testimony, Ms. Johnson's credibility as a witness was undercut by a measure of evasiveness while testifying.

The defendant testified that Mr. Geller did not explain his decision not to call his mother, and that he disagreed with that decision. He did not protest, he testified, because he felt intimidated.

**Discussion**

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel during a criminal trial. To prove an ineffective assistance of counsel claim, the defendant must show: 1) his or her counsel's performance was "'below the objective standard of reasonableness;'" and 2) "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'" *Howard v. Bouchard*, 405 F.3d 459, 481 (6th Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). To show a counsel's performance was below this standard, the defendant must overcome the presumption that the "'challenged action might be considered sound trial strategy.'" *Id.*(quoting *Strickland*, 466 U.S. at 689).

At issue in this case is whether defendant's trial counsel violated the Sixth Amendment when he decided not to call the defendant's mother as a witness during trial.

An attorney's decision whether to call a witness is a strategic decision. *U.S. v. Snyder*, 787 F.2d 1429, 1431 (10th Cir. 1986); *see also Gov't of the Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1434 (3rd Cir. 1996) (recognizing that witness selection is a decision "counsel is entitled to make at trial"). "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. U.S.*, 258 F.3d 453, 457 (6th Cir. 2001).

I conclude that Mr. Geller made a reasoned strategic decision not to call Ms. Johnson in light of his concern that her exculpatory testimony would be undercut by her other testimony about how the officer carried the weapon and that it was a revolver, not a semi-automatic.

There is the possibility that Mr. Geller misunderstood Ms. Johnson's responses to his inquires during their hallway conversation. He was asking her about two subjects in the evidentiary record: the lack of a trigger guard and how the gun could be loaded. As he understood Ms. Johnson's responses, her testimony would have contradicted the indisputable physical facts that the gun could not be carried by a pencil through the non-existent trigger guard and the weapon was a semi-automatic pistol, rather than a revolver.

4

That may not have been what Ms. Johnson was communicating, or attempting to communicate, in response to Mr. Geller's inquiries. But I have no doubt that was how he understood her responses.

Ideally, perhaps, Mr. Geller should have made those inquiries during pre-trial interviews with Ms. Johnson. But it is far from uncommon that what happens at trial differs from what the lawyers expect to happen. When something unanticipated happens, they have to respond as best they can as events unfold.

On the basis of all the circumstances, I find that Mr. Geller's determination that the risks of calling Ms. Johnson, despite the exculpatory nature of her anticipated testimony about ownership of the weapon, outweighed the benefit of such testimony, were it to be impeached, was reasonable. Thus, his decision not to call Ms. Johnson was not "so ill-chosen that it permeate[d] the entire trial with obvious unfairness." *Hughes, supra.*

## Conclusion

In light of the foregoing, I conclude that the defendant's trial and conviction were not tainted by unconstitutionally ineffective assistance of counsel. It is, therefore,

ORDERED THAT the defendant's motion for a new trial be, and the same hereby is overruled.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge